## In re NORDSETH.

### NORDSETH v. KROGMAN et al.
### No. 5495.

Circuit Court of Appeals, Seventh Circuit.
Nov. 8, 1935.

Samuel Wodika, of Chicago, Ill., for appellant.

William N. Marshall, Leo W. Hoffman, Calmon R. Golder, and George A. Kappus, all of Chicago, Ill., for appellees.

Before SPARKS and ALSCHULER, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

This is an appeal from an order of the District Court declining approval of an ex-tension proposal of the debtor under section 74 of the Bankruptcy Act as amended by Act June 7, 1934, § 2, 11 USCA § 202.

A seventeen-apartment building located at 6300 North Claremont avenue, Chicago, Ill., hereinafter referred to as parcel A, and a six-apartment building located at 5680 Ridge avenue, Chicago, Ill., and here-inafter referred to as parcel B, are the only properties of debtor directly involved in this appeal.

Parcel A is encumbered by a first mort-gage to the Chicago Title & Trust Com-pany, as trustee, to secure the payment of outstanding bonds in the principal sum of $40,000 owned by appellee Herbert W. Krogman, and a junior mortgage indebted-ness in the principal sum of $14,000 owned by Charles P. Ekholm. Parcel B is en-cumbered by a first mortgage in the sum of $17,500 in favor of the appellee New York Life Insurance Company.

Appellant was unable to obtain con-sents of a majority in number and amount of her creditors, but prayed that the ex-tension proposal be confirmed without such consents under the terms of the amend-ment of June 7, 1934, to section 74, su-pra. To such confirmation appellees ob-jected.

This amendment provides that if "the debtor fails to obtain the acceptance of a majority in number of all creditors whose claims are affected by an extension pro-posal representing a majority in amount, the debtor may submit a proposal for an extension including a feasible method of financial rehabilitation for the debtor which is for the best interest of all the creditors, including an equitable liquida-tion for the secured creditors whose claims are affected." Bankr. Act § 74 (e), as amended by Act June 7, 1934, § 2, 11 US CA § 202 (e).

Paragraph (g) of section 74 (11 USCA § 202 (g) provides that: "The court shall confirm the proposal if satisfied that (1) it includes an equitable and feasible meth-od of liquidation for secured creditors whose claims are affected and of financial rehabilitation for the debtor; (2) it is for the best interests of all creditors."

Paragraph (i) of said section 74 (11 USCA § 202 (i) provides: "Upon its con-firmation an extension proposal shall be binding upon the debtor and his unsecured and secured creditors affected thereby: Provided, however, That such extension or composition shall not reduce the amount

of or impair the lien of any secured creditor, but shall affect only the time and method of its liquidation."

The District Court found that the proposed extension did not include an equitable and feasible method of liquidation of the first mortgages affected thereby, was not for the best interests of the holders of the first mortgages, and would result in an impairment of their liens.

The proposed plan of extension (as modified by the referee), among other things, provided:

1. That all first mortgage notes be extended for three years.

2. That their rate of interest remain the same (six per cent.) but the holders to be paid 3 per cent. interest per annum from the net income from the respective parcels.

3. That the remaining net income from the respective parcels be used in the following order: (a) To pay current taxes and 20 per cent. annually on all delinquent taxes; (b) to pay past-due interest; (c) to apply on principal of first mortgages and, after payment of first mortgage on parcel A, to apply on second mortgage.

4. Debtor to manage properties and receive 5 per cent. of net income for management.

Whether the plan contains an equitable and feasible method of liquidation of the first mortgages depends in a large degree on the income-producing qualities of the two parcels of real estate. Appellant estimates the annual gross revenue to be produced from parcel A at $7,506 and estimates the operating expenses, current taxes, and 3 per cent. interest on first mortgage to be $5,554.74, concluding that some $1,900 would remain to apply on back taxes, which she says are $8,526. She also speculates that, if the penalties that have accrued on account of delinquent taxes could be waived, this sum could be reduced to $7,263.50. She further avers that a disputed item of $1,824.49 (which the referee held should go to the holder of the mortgage lien) should be paid on account of past-due taxes, and concludes that if these two contingencies were to materialize in accordance with her hope there would remain a balance of $413.07 at the end of the three-year period with all past due and current taxes paid.

The evidence would indicate that the referee had properly directed the payment of the disputed item of $1,824.49 to apply on interest and it would not therefore be available. Neither can a court speculate that any reduction in the amount due on account of delinquent taxes will be made even if the same could legally be done.

Appellant's wholly optimistic view of the results to be obtained from parcel A we believe unjustified. On the contrary, we think an unbiased view of the evidence appearing in the record would lead to the reasonable conclusion that, at the end of the three-year period, the delinquent taxes would not be fully paid and the total indebtedness on account of the first mortgage on parcel A would be several thousand dollars in excess of what it was at the time the plan was expected to go into operation. The total amount of first liens against the property at the time of the institution of this proceeding was in excess of $50,000, to say nothing of the junior lien of $14,000 with accrued interest.

The situation with reference to parcel B is no more favorable than that of parcel A.

We think no useful purpose would be served by a further discussion of the evidence; but it is sufficient to say that the District Court's conclusion that the plan was neither equitable nor feasible is amply fortified by the evidence in the case. As we said in the case of In re Sterba (C. C. A.) 74 F.(2d) 413, 417, in reference to section 74 and other sections: "They contemplate a feasible plan, *promptly presented,* whereby the overburdened debtor may, through creditors' cooperation, * * * secure a scaling of debt or interest, or an extension of due date of debts. If none of these objects can be accomplished no good purpose can be attained by retaining jurisdiction of the proceedings."

The judgment of the District Court will be affirmed.

Affirmed.